**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RANDY C. THOMPSON, an individual, | |
| Plaintiff, | |
| v. | |
| CITY OF ASBURY PARK a governmental entity, | Civil Action No.: _____ |
| CHIEF DAVID KELSO, in his official capacity as Chief of Police of Asbury Park Police Department, | **COMPLAINT AND JURY DEMAND** |
| CAPTAIN JEFFERY WHITE, in his official capacity as Captain of the Asbury Park Police Department, | |
| SERGEANT MICHAEL CASEY, in his official capacity as a Police Officer of Asbury Park Police Department, | |
| OFFICER JOEL FIORI, in his official capacity as an Asbury Park Police Officer, | |
| JAMES N. BUTLER, JR., in his official capacity as Asbury Park Municipal Court Prosecutor, and | |
| JOHN DOE POLICE OFFICERS 1-10, fictitious individuals, | |
| ABC ENTITIES 1-10, fictitious entities, | |
| Defendants. | |

Plaintiff Randy C. Thompson, by and through his attorneys, Lento Law Group, P.C., bring

this action for damages and other legal and equitable relief against Defendants City of Asbury

Park, Chief David Kelso, Captain Jeffery White, Sergeant Michael Casey, Officer Joel Fiori, James

N. Butler, Jr., John Doe Police Officers 1-10, and ABC Entities 1-10, alleging as follows:

## LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Randy C. Thompson
1130 Springwood Avenue
Asbury Park, New Jersey 07712

City of Asbury Park
City Hall
One Municipal Plaza
Asbury Park, New Jersey 07712

Chief David Kelso
Asbury Park Police Department
One Municipal Plaza
Asbury Park, New Jersey 07712

Captain Jeffery White
Asbury Park Police Department
One Municipal Plaza
Asbury Park, New Jersey 07712

Sergeant Michael Casey
Asbury Park Police Department
One Municipal Plaza
Asbury Park, New Jersey 07712

Officer Joel Fiori
Asbury Park Police Department
One Municipal Plaza
Asbury Park, New Jersey 07712

James N. Butler, Jr.
Municipal Prosecutor
One Municipal Plaza
Asbury Park, New Jersey 07712

John Doe Police Officers 1-10 & ABC Entities 1-10
(Fictitious Individuals & Entities)

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

2.      Plaintiff brings this action to redress the deprivation of Plaintiff's constitutional rights under the First, Fourth, Sixth, and Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983, 1985, and 1988, which provide for attorneys' fees in civil rights claims.

3.      This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so related to Plaintiff's federal claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

4.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as all Defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## PARTIES

5.      At all times relevant hereto, Plaintiff Randy C. Thompson, is an adult resident citizen of the County of Monmouth, State of New Jersey.

6.      At all times relevant hereto, Defendant City of Asbury Park ("the City") is a governmental entity, specifically, a municipal corporation under N.J.S.A. § 40:42-1, and a "person" subject to suit within the meaning of 42 U.S.C. § 1983. The City operates and supervises the Asbury Park Police Department (the "APPD" or the "Department").

7.      At all times relevant hereto, and upon information and belief, Defendant Chief David Kelso ("Chief Kelso"), is an adult resident citizen of the County of Monmouth, State of New Jersey, and was, at all times relevant, the Chief of Police of the APPD.

8.      At all times relevant hereto, and upon information and belief, Defendant Captain Jeffery White ("Captain White"), is an adult resident citizen of the County of Monmouth, State of New Jersey, and was, at all times relevant, the Captain of the APPD.

9.      At all times relevant hereto, and upon information and belief, Defendant Sergeant Michael Casey ("Sergeant Casey"), is an adult resident citizen of the County of Monmouth, State of New Jersey, and was, at all times relevant, a sergeant within the APPD.

10.     At all times relevant hereto, and upon information and belief, Defendant Officer Joel Fiori ("Officer Fiori"), is an adult resident citizen of the County of Monmouth, State of New Jersey, and was, at all times relevant, an APPD police officer.

11.     At all times relevant hereto, and upon information and belief, Defendant James N. Butler, Jr. ("Prosecutor Butler"), is an adult resident citizen of the County of Monmouth, State of New Jersey, and was, at all times relevant, the Asbury Park Municipal Court Prosecutor.

12.     At all times relevant hereto, Defendant JOHN DOE OFFICERS 1-10 (fictitious individuals), are police officers within the APPD, servable at One Municipal Plaza, Asbury Park, New Jersey 07712, whose actions or omissions contributed in some relevant and material way to the causes of action complained of herein. At all times relevant hereto, Defendant John Doe Officers 1-10 acted under color of State law and in their official capacity. Plaintiff does not presently know the true identities of these Defendants, but will seek leave to amend the Complaint to properly name these Defendants after conducting discovery, should the need arise.

13.     At all times relevant herein, and upon information and belief, Defendant ABC ENTITIES 1-10 (fictitious entities) are believed to be entities whose actions or omissions contributed in some relevant and material way to the causes of action complained of herein. Plaintiff does not presently

know the true identities of these Defendants, but will seek leave to amend the Complaint to properly name these Defendants after conducting discovery, should the need arise.

## GENERAL FACTUAL ALLEGATIONS

### The Hasani Best Shooting

14.     On or about the night of August 21, 2020, police responded to a 911 call on the 900 block of 4th Avenue in Asbury Park.

15.     Shortly after 9:00PM, Asbury Park police officers arrived at the residence of Hasani Best, a 39 year-old African American man.

16.     The 911 call was made by Best's neighbor in response to the sounds of an ongoing domestic dispute in the Best residence between Best and a female occupant of the residence.

17.     By the time police arrived at the residence, the woman Best had gotten into the dispute with was already outside, however, Best had barricaded himself inside a room within the second-floor apartment.

18.     Over the next forty-five minutes, Asbury Park police officers pleaded with Best to come out of the room and to drop the knife which Best had informed the officers he was armed with.

19.     At approximately 10:08PM according to police body cam footage released to the public, Best cracks open the door to the room, still holding the knife, proceeds to joke with one officer about cutting his hair, and then closes the door once again.

20.     Shortly thereafter, Best opens the door and moves quickly towards the officers, still holding the knife.

21.     Despite a verbal warning from Asbury Police Sgt. Sean DeShader, also African American, Best announces, "I'm going to stab him," referring to DeShader.

22.     In response, DeShader then proceeded to fire at least two shots at Best who was later pronounced dead at Jersey Shore University Medical Center shortly thereafter.

### The October 14, 2020 Protest & Plaintiff's Arrest

23.     The shooting of Hasani Best sparked a firestorm of public outcry, resulting in numerous online publications reporting on the story, and with several commentators reported as voicing concern about whether the shooting was justified or an unnecessary overreaction by Sgt. DeShader.

24.     Plaintiff is a police reform advocate, activist, and founder of Help Not Handcuffs, Inc., a domestic non-profit corporation dedicated to police reform.

25.     Plaintiff played a critical role in coordinating with the family of Hasani Best and other local advocates to demand the release of the bodycam video of Best's killing by police.

26.     Plaintiff also organized a press conference which alerted the public that the bodycam video supported the family's version of events that the police killing was unjustified. The press conference was nationally syndicated in the media and published internationally.

27.     This press conference was a turning point which turned the public's attention away from police talking points and towards the question of whether the killing of Hasani Best was in any way justified.

28.     Given Plaintiff's advocacy with respect to the Hasani Best killing, on or about Wednesday, October 14, 2020, Plaintiff, and others, organized and participated in a march protesting the killing of Best.

29.     Plaintiff, along with several dozen protestors, marched peacefully down 4th Avenue in Asbury Park toward the intersection of Memorial Drive.

30.     At the same time and place, Defendant Sergeant Michael Casey and another Officer, believed to be Defendant Captain White, both in unmarked police cars, were observed hiding and spying on the people gathering for the protest.

31.     One car was photographed by Plaintiff and was later determined to that of Defendant Sergeant Casey.

32.     At no time prior to the demonstration mark beginning did Casey or any other officer approach the organizers or other protesters to discuss the protest; rather they tried to conceal their presence.

33.     That was the case until Defendant Sergeant Casey parked his patrol car facing west on 4th Avenue as Plaintiff and the other protestors approached the roadway from the opposite direction.

34.     Defendant Sergeant Casey instructed the protestors to move onto the sidewalk, however, this instruction went unheard or ignored by the group of marchers.

35.     Plaintiff changed direction several times to comply with Defendant Sergeant Casey's instruction, however, as he proceeded past Defendant Sergeant Casey, Casey advised Plaintiff that he was under arrest and proceeded to physically restrain Plaintiff.

36.     Multiple officers wrestled with Plaintiff in the roadway before bending him over on the hood of a police vehicle and forcibly pulling his arms behind his back.

37.     Video footage taken of the arrest is publicly available on online news outlets.

38.     In one such video[1], Plaintiff can be heard asking Defendant Sergeant Casey and the other officers pinning him – these including Defendant Captain White and Defendant Officer Fiori – down multiple times, "Why are you arresting me? Why are you arresting me?"

---

[1] *See*, the video here: https://www.app.com/story/news/2020/10/14/organizer-hasani-best-protest-march-arrested/3657334001/

39.    Neither Defendant Sergeant Casey nor Defendants White and Fiori answer Plaintiff, and Casey and White then proceed to apply a gooseneck compliance hold to each of Plaintiff's wrists.

40.    At one point, while Defendant Sergeant Casey is handcuffing Plaintiff, Plaintiff can be heard yelling out in pain, and exclaiming, "They're tight, they're tight, they're tight!"

41.    As a direct and proximate result of the excessive force exerted upon Plaintiff's wrists by Defendants Casey and White, Plaintiff was caused to suffer bodily injury.

42.    Plaintiff was then taken to APPD headquarters for processing and was subsequently charged with the following:

      a.    Obstructing Highways and Other Public Passages (N.J.S.A. 2C:33-7(a))

      b.    Obstructing Administration of Law or Other Governmental Function (N.J.S.A. 2C:29-1)

      c.    Resisting Arrest; Eluding Officer (N.J.S.A. 2C:29-2); and

      d.    Disorderly Conduct, Improper Behavior, (N.J.S.A. 2C:33-2(a)(1))

43.    Further, as a direct and proximate result of the arrest, Plaintiff has been subjected to a great deal of public ridicule, particularly online on various social media platforms.

44.    It is important to note further that, following Plaintiff's arrest, the demonstration march continued, with dozens of protestors continuing to march, and even dance, in the street in full view of the other Defendant Officers.

45.    Even so, none of the other protestors were physically assaulted by police, let alone arrested.

46.    Thus, Plaintiff must conclude that his was a malicious and targeted arrest.

## The Languishing Charges

47.    Despite the above charges having been issued against Plaintiff on or about October 14, 2020, to date, nearly two years later, these charges have not been acted upon by Defendant James

N. Butler, Jr., the Asbury Park Municipal Court Prosecutor, nor have they been disposed of through dismissal.

48.     On or about April 28, 2021, counsel which Plaintiff had hired to represent him in connection with the criminal charges – attorney Terrell Ratliff of the Lento Law Group, P.C. – filed a Motion to Dismiss for Speedy Trial Violations.

49.     As attorney Ratliff made clear in his Certification accompanying said Motion, Plaintiff's Sixth Amendment right to a speedy trial had been violated by Defendant Butler's refusal or neglect to actively prosecute the case.

50.     As of the date of attorney Ratliff's Certification, he writes, "Not a single court date has been set and there has not been any reasonable justification for such delay." (*See*, a true and correct copy of this Motion annexed hereto as **EXHIBIT "A"**).

51.     To date, however, just as with the charges themselves, this Motion has not been disposed of, with no hearing thereon having taken place and no ruling having been issued.

52.     This is despite the fact that attorney Ratliff has called Defendant Butler on numerous occasions to prompt activity in the matter, but Defendant Butler has not returned attorney Ratliff's telephone calls.

53.     In fact, according to the New Jersey eCourts Municipal Court Case Search (MCCS), the current status with respect to both municipal complaints (Case Nos.: S-2020-001242-1303 & S-2020-001244-1303) and all four charges, is "Failure to Appear/Pay".

54.     This is despite the fact that, to date, Plaintiff, nor attorney Ratliff, have been informed of any hearing with respect to these matters, apart from one previously scheduled on October 23, 2021, but which had been adjourned at Defendants request. No new date was ever set.

55.    Information from the MCCS does indicate a virtual Court Date of August 10, 2021 at 9:00AM, however, neither Plaintiff nor attorney Ratliff have ever received notice of this hearing, and do not believe said hearing ever occurred, given its close proximity to the adjourned October 23, 2021 hearing.

56.    Further, if Plaintiff had missed a scheduled hearing, it would be expected that a bench warrant for Plaintiff's arrest would have been issued pursuant to R. 7:8-9; however, this has not occurred.

57.    Therefore, it appears that Defendant Butler has caused, whether intentionally or negligently, the charges against Plaintiff to languish unresolved, and further, has consequently prejudiced Plaintiff significantly as a result of the unresolved charges looming over him for the past two years.

**COUNT I**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Unlawful Detainment & Arrest)**
**(As to Defendants Sergeant Michael Casey, Captain Jeffery White, & Officer Joel Fiori)**

58.    Plaintiff repeats all of the allegations contained in the Complaint thus far above, and hereby incorporates same as if fully set forth at length.

59.    The Fourth Amendment requires police officers to have articulable reasonable suspicion before detaining a criminal suspect.

60.    The Fourth Amendment requires police officers to have probable cause before placing a criminal suspect under arrest.

61.    At all times relevant, Plaintiff had a clearly established right to liberty, including his right to personal safety and bodily integrity, as well as protection from unlawful seizure, unnecessary force, and unreasonable force pursuant to the Fourth Amendment to the United States Constitution.

62.     At all times relevant, as a police officer acting under color of law, Defendants Sergeant Michael Casey, Captain Jeffery White, & Officer Joel Fiori (collectively, the "Defendant Officers") were required to obey the laws of the United States.

63.     Defendant Officers intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently detained, handcuffed, and/or arrested Plaintiff without a warrant or any lawful basis.

64.     It is well established law that a permit is not required for a protest or march; this is commensurate with the protections of free speech and free assembly as guaranteed by the First Amendment of the United States Constitution.

65.     An event such as a parade which requires the blocking of traffic is one exception to this axiom, and would require a permit.

66.     However, the Hasani Best protest demonstration organized by Plaintiff did not obstruct traffic – at least, not on its own accord.

67.     The march was planned to start on Fourth Avenue in front of 915 Fourth Avenue and proceed to police headquarters at One Municipal Plaza.

68.     Given that APPD headquarters is nine or ten blocks away from the starting point of the march, the march necessarily involved multiple street crossings.

69.     It is not illegal for individuals, even in large groups, to cross the street. This is a common occurrence in any large city, with groups of commuters crossing roadways and intersections regularly.

70.     A single individual in the roadway can be deemed to be obstructing traffic, just as a larger group of multiple individuals.

71.     Thus, it follows logically that the proper measurement of gauging the degree of "obstruction" is not the number of persons in the roadway, but the duration of time they are present in the roadway.

72.     This view is commensurate with the definition of "obstructs" provided in N.J.S.A. 2C:33-7(a), which states that, " 'Obstructs' means renders impassable without unreasonable inconvenience or hazard."

73.     It cannot be said that Plaintiff, nor any of the protest marchers posed an unreasonable hazard to the public as it is undisputed that it was a peaceful, nonviolent march.

74.     Thus, the sole determining metric at play in the Defendant Officers' arrest of Plaintiff in the subject circumstance must be the degree of inconvenience Plaintiff and his fellow marchers posed to traffic.

75.     As stated, a large group of individuals is free to cross the street just as a single individual. It is a necessary, momentary obstruction simply to traverse the span of the roadway.

76.     Therefore, it is abundantly clear that had the Defendant Officers not approached Plaintiff in the first instance, the marchers would have continued on their route across Memorial Drive without incident, and with only minimal – certainly not unreasonable – inconvenience to traffic.

77.     Thus, any prolonged and unreasonable obstruction posed by Plaintiff's and his fellow marcher's presence on the roadway was caused solely by the interference of the Defendant Officers, and the obstruction they posed to the march continuing along its intended route across the street.

78.     Importantly, N.J.S.A. 2C:33-7(a) explicitly states that, "No person shall be deemed guilty of recklessly obstructing in violation of this subsection solely because of a gathering of persons to

hear him speak or otherwise communicate, or solely because of being a member of such a gathering."

79.     In other words, <u>N.J.S.A.</u> 2C:33-7(a) makes an explicit exception to its obstruction provision for public gatherings such as Plaintiff's protest march.

80.     Even so, the Defendant Officers arrested Plaintiff, in clear violation of the provisions of <u>N.J.S.A.</u> 2C:33-7(a), and for an obstruction which they themselves caused to become unreasonably inconvenient to traffic.

81.     Additionally, not only was Plaintiff's protest was not in violation of <u>N.J.S.A.</u> 2C:33-7(a), but it was not in violation of any Asbury Park Municipal Ordinances either.

82.     The relevant ordinances would be those located within Asbury Park Municipal Code §§4-10, *et seq.*, "Permits for Special Events".

83.     Specifically, §4-10.3, "Permit Required," makes clear that, "Any person or organization desiring to hold any special event as defined herein, must first apply for and obtain a special events permit..."

84.     Importantly, §4-10.1, "Definitions," makes a distinction between "special events" and "demonstrations".

85.     Per its definition, "special events" include things such as, parades, concerts, races, walkathons, bicycle races, fairs, carnivals, celebrations, sporting events, flea markets, plunges, bonfires, shows, weddings, "or any other type of large event generating a parking or traffic situation that may interfere with the movement of normal traffic."

86.     Per its definition, a "demonstration" means, "a public assembly, meeting, gathering or *protest* which may include speechmaking, *marching*, holding of vigils and all other forms of

conduct for the purpose of expressing views or grievances. *Such gatherings would occur on City streets, sidewalks, or property.*" (Emphasis added).

87.     It is quite clear then, that Plaintiff organized and engaged in a demonstration as defined by the Asbury Park Municipal Code, and such demonstrations: (1) do not require a permit, and (2) are permitted to occur on "City streets, sidewalks, or property".

88.     Therefore, Plaintiff's demonstration was not unlawful under both State statute and city municipal code.

89.     Therefore, Defendants Officers' actions – arrested Plaintiff for conduct which is, in fact, *expressly legal* – constituted an unlawful arrest of Plaintiff.

90.     The aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

91.     As a direct and proximate result of the illegal and unconstitutional acts of the Defendant Officers while acting under color of State law, Plaintiff was harmed and suffered various damages.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Unlawful Search)**
**(As to Defendant Sergeant Michael Casey)**

92.     Plaintiff repeats all of the allegations contained in the Complaint thus far above, and hereby incorporates same as if fully set forth at length.

93.     Upon Defendant Sergeant Michael Casey arresting Plaintiff, Defendant Sergeant Casey effectuated an unlawful search of Plaintiff's person.

94.     At all times relevant, Plaintiff had a clearly establish right to be free from unreasonable searches and seizures.

95.     The Fourth Amendment prohibits police officers from searching individuals without probable cause or reasonable suspicion that they are engaged in criminal activity.

96.     No probable cause or reasonable suspicion existed to suggest that Plaintiff was engaged in criminal activity for the reasons articulated in Count I, and yet Defendant Sergeant Casey chose to unlawfully detain Plaintiff and search his person without any lawful basis.

97.     As a direct and proximate result of Defendant Sergeant Casey's willful violation of Plaintiff's constitutionally-protected rights while acting under color of State law, Plaintiff has suffered harm.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Excessive Force)
**(As to Defendants Sergeant Michael Casey, Captain Jeffery White, & Officer Joel Fiori)**

98.     Plaintiff repeats all of the allegations contained in the Complaint thus far above, and hereby incorporates same as if fully set forth at length.

99.     The Fourth Amendment prohibits law enforcement from using excessive force when effectuating an arrest.

100.    As previously alleged, while effectuating the arrest of Plaintiff, Defendants Sergeant Michael Casey, Captain Jeffery White, & Officer Joel Fiori (collectively, the "Defendant Officers") all pinned Plaintiff to the hood of an APPD police car.

101.    Defendants Casey and White then forcefully grabbed Plaintiff's arms and proceed to pull them behind Plaintiff's back.

102.    Defendants Casey and White then applied a painful gooseneck compliance hold to each of Plaintiff's wrists.

103.     While all Defendant Officers continued to pin Plaintiff against the hood of the police vehicle, Defendant Sergeant Casey proceeded to handcuff Plaintiff in an uncomfortably tight and painful manner.

104.     In response, Plaintiff yelled out in pain and exclaimed, "They're tight, they're tight, they're tight!" signaling to Defendant Sergeant Casey to loosen the handcuffs; however, he did not do so and proceeded to haul Plaintiff to the police vehicle.

105.     As a direct and proximate result of the excessive force exerted upon Plaintiff by the Defendant Officers, while acting under color of State law, Plaintiff was caused to suffer bodily injury.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Failure to Intervene)**
**(As to Defendants Sergeant Michael Casey, Captain Jeffery White, & Officer Joel Fiori)**

106.     Plaintiff repeats all of the allegations contained in the Complaint thus far above, and hereby incorporates same as if fully set forth at length.

107.     The failure to intervene by all Defendants led to harm to Plaintiff.

108.     As explained in the previous Counts herein, Defendants Sergeant Michael Casey, Captain Jeffery White, & Officer Joel Fiori (collectively, the "Defendant Officers") were individually and collectively subjecting Plaintiff to numerous violations of his Constitutionally-protected rights, including, but not limited to, excessive force, unlawful arrest, and unlawful search.

109.     No single Defendant, be it Casey, White, or Fiori, intervened to stop these violations of Plaintiff's civil rights, nor did any single defendant intervene to protect Plaintiff from the excessive force being exerted upon him.

110.     Rather, each Defendant continued to so violate Plaintiff's rights and continued to so exert excessive force upon him.

111.    Each of the Defendant Officers acted under the color of state law in their actions with regard to this matter, and their actions deprived Plaintiff of his rights and led to his harm.

112.    Each of the Defendant Officers named in this Count knew or should have known that each other Defendant Officer herein was violating Plaintiff's Constitutionally-protected rights, yet intentionally chose or negligent failed not to act or intervene to stop their fellow Defendants from so violating Plaintiff's rights.

113.    As a direct and proximate result of the Defendant Officers' individual failures to intervene to stop the unconstitutional conduct of each other Defendant Officer while acting under color of State law, Plaintiff was caused to suffer bodily injury and various other damages.

**COUNT V**
***MONELL* CLAIM**
**FAILURE TO TRAIN AND SUPERVISE**
**(As to Defendants City of Asbury Park and Chief David Kelso)**

114.    Plaintiff repeats all of the allegations contained in the Complaint thus far above, and hereby incorporates same as if fully set forth at length.

115.    Under the Fourth Amendment to the Constitution of the United States, Plaintiff has a clearly established right to be free from excessive force, unlawful arrest, and unlawful search.

116.    As articulated more fully in the previous Counts, Defendants Sergeant Michael Casey, Captain Jeffery White, & Officer Joel Fiori (collectively, the "Defendant Officers") were individually and collectively subjecting Plaintiff to numerous violations of his Constitutionally-protected rights, including, but not limited to, excessive force, unlawful arrest, and unlawful search.

117.    Defendants the City of Asbury Park and Chief David Kelso are each responsible, individually and collectively, for the management, direction, administration, and/or supervision of

the operations of the Asbury Park Police Department and their employed officers, including the Defendant Officers herein.

118.    As such, these Defendants had a duty, among other things, to ensure that the employees, agents, and/or workers who staff the Asbury Park Police Department as police officers tasked with both enforcing the law and protecting the public, are adequately and properly trained and supervised so as to perform their job functions properly without exhibiting dangerous characteristics, behaviors, tendencies, or customs which would otherwise physically endanger those arrested or unlawfully abridge their Constitutionally-protected rights.

119.    Defendants the City of Asbury Park and Chief David Kelso knew or had reason to know, given adequate and proper supervision, that the employees, agents, and/or workers who staff the Asbury Park Police Department, specifically the Defendant Officers herein, were inadequately and inappropriately trained and/or were inadequately and inappropriately supervised with respect to their respective job duties and functions.

120.    The excessive force demonstrated by the Defendant Officers in the matter *sub judice*, as well as their numerous violations of Plaintiff's constitutional rights as complained of herein is evidence of the inadequate degree of training and supervision Defendants the City of Asbury Park and Chief David Kelso provided and maintained over said officers.

121.    It is reasonably foreseeable that officers, such as the Defendant Officers, who are inadequately and inappropriately trained could pose a risk of harm to arrestees.

122.    It is also reasonably foreseeable that officers who are inadequately and inappropriately supervised to ensure compliance with any such training as aforesaid may not then abide by such training, and may, therefore, not comport themselves appropriately.

123.    Unfortunately, Defendants the City of Asbury Park and Chief David Kelso failed to exercise due care in ensuring that the Defendant Officers were adequately and properly trained with respect to such things as excessive force, unlawful arrests, and unlawful searches.

124.    In fact, a news article[2] reporting on Plaintiff's arrest, indicates that Defendant Chief David Kelso issued a statement supporting and therefore ratifying the Defendant Officer's conduct.

125.    Specifically, the article cites Defendant Kelso as saying:

> After reviewing the information available, I support my officers in the arrest of Randy Thompson. Furthermore, the Asbury Park Police Department supports everyone's right to peacefully protest. However, peaceful protest does not include the right to violate the law. Unfortunately, several requests to comply with the law were ignored which resulted in this arrest. We ask that anyone planning a protest, march or event of any kind, to please coordinate your efforts with the city and the police department to ensure everyone's safety. This is to make sure everyone is aware of and abides by the law as well as local ordinances.

126.    For the reasons articulated in Count I, Plaintiff's peaceful demonstration was explicitly not in violation of State statute nor Asbury Park local ordinance, and thus, Defendant Sergeant Casey's "several requests" which Defendant Kelso refers to in the above quote were unlawful requests.

127.    Perhaps Defendant Kelso – and thus, his officers – are simply unaware of the exception provided for in N.J.S.A. 2C:33-7(a), and of the distinction between "special events" requiring permits and "demonstrations" not requiring them; however, it is clear from Defendant Kelso's statement that he, and by extension Defendant the City of Asbury Park, supported, ratified, endorsed, and/or condoned the unlawful conduct of the Defendant Officers.

128.    Thus, as a direct and proximate result of the negligent failures, actions, and/or omissions of Defendants the City of Asbury Park and Chief David Kelso to adequately and properly train

---

[2] https://www.app.com/story/news/2020/10/14/organizer-hasani-best-protest-march-arrested/3657334001/

and supervise their employees, Plaintiff was caused to sustain bodily injury and various other damages.

## COUNT VI
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Malicious Prosecution)
### (As to Defendants Sergeant Michael Casey and James N. Butler, Jr.)

129.    Plaintiff repeats all of the allegations contained in the Complaint thus far above, and hereby incorporates same as if fully set forth at length.

130.    The Fourth Amendment requires police officers to possess sufficient probable cause before charging a criminal suspect with a crime.

131.    Further, *New Jersey Rule of Professional Responsibility* RPC 3.8, "Special Responsibilities of Prosecutors," provides at subpart (a) that a prosecutor shall "refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause..."

132.    Defendant Sergeant Michael Casey, whether intentionally, knowingly, maliciously, recklessly, and/or negligently arrested Plaintiff and file initiated criminal proceedings against him when they arrested him and charged him with various offenses as previously alleged herein.

133.    For the reasons articulated in Count I herein, Defendant Sergeant Casey's arrest of Plaintiff and initiation of this criminal charge against Plaintiff was without sufficient probable cause, legal justification, just cause, or any other legally valid reason.

134.    Consequently, Defendant Prosecutor Butler's prosecution of Plaintiff with respect to those charges is similarly without sufficient probable cause, legal justification, just cause, or any other legally valid reason, given that the charges are the byproduct of the Defendant Casey's unlawful arrest of Plaintiff.

135.    Defendant Sergeant Casey's initiation of these charges against Plaintiff and Defendant Prosecutor Butler's refusal or negligent failure to drop these charges was done with malice and

bad faith given that they have no knowledge of any fact or circumstance which would lead a reasonable person to believe that Plaintiff committed any offense, whatsoever.

136.    Unfortunately, given the continued languishing of the charges against Plaintiff, now nearly two years after their filing, they have not, as of yet, been terminated in his favor through dismissal, however, this only further illustrates that the intent behind their filing was arbitrary and capricious.

137.    As a result of Defendant Sergeant Michael Casey's and Defendant James N. Butler, Jr.'s malicious prosecution of Plaintiff, he has suffered various damages.

**COUNT VII**
**REQUEST FOR DECLARATORY RELIEF**

138.    Plaintiff repeats all of the allegations contained in the Complaint thus far above, and hereby incorporates same as if fully set forth at length.

139.    Given the reasons articulated in Count I as to why Plaintiff's arrest in this matter was unlawful, especially considering that he was not only engaging in no unlawful conduct at the time he was placed under arrest, but was, in fact, engaging in conduct which is *expressly legal* under N.J.S.A. 2C:33-7(a), it is clear that the charge against Plaintiff in connection with same is not supported by probable cause, and is, therefore, without merit.

140.    Given that the remaining charges against Plaintiff – Obstructing Administration of Law or Other Governmental Function (N.J.S.A. 2C:29-1), Resisting Arrest; Eluding Officer (N.J.S.A. 2C:29-2); and Disorderly Conduct, Improper Behavior, (N.J.S.A. 2C:33-2(a)(1)) – were the byproduct of an unlawful arrest, and given that it is not unlawful for an individual to resist arrest, "unless the peace officer employs unlawful force to effect such arrest," which was, in fact, the case here, as articulated more fully in Count III herein, the remaining charges are also not supported by probably cause, and are, therefore, without merit.

141.    These charges must, therefore, be dismissed or dropped.

142.    Plaintiff respectfully requests this Court issue an Order directing Defendant Prosecutor James N. Butler, Jr., to immediately drop the charges against Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RANDY C. THOMPSON prays for relief as to all counts as follows:

1) For judgement against the Defendants jointly, severally, and alternatively, for general, compensatory, punitive, and exemplary damages, with interest;

2) Reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. 1988,

3) Declaratory relief in the form articulated in Count VII herein; and

4) For such other and further relief as this Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff RANDY C. THOMPSON demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: <u>October 12, 2022</u>

Respectfully Submitted,

**LENTO LAW GROUP, P.C.**

Dated: <u>October 12, 2022</u>     _____
JOSEPH D. LENTO, ESQUIRE
Attorney ID No.: 013252008
LENTO LAW GROUP, P.C.
3000 Atrium Way, Suite 200
Mount Laurel, New Jersey  08054
(856) 652-2000-Phone
(856) 375-1010-Facsimile
Email:  jdlento@lentolawgroup.com
*Attorney for Plaintiff, Randy C. Thompson*